IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

EDWARD R. JOHNSON,

   Plaintiff,

v.           CASE NO. 2:08-cv-01137

MICHAEL J. ASTRUE,
Commissioner of Social Security,

   Defendant.

## PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for disability insurance benefits ("DIB") and supplemental security income ("SSI"), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f.  By standing order, this case was referred to this United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B).

Plaintiff, Edward Johnson (hereinafter referred to as "Claimant"), protectively filed applications for SSI and DIB on September 16, 2005, alleging disability as of December 22, 2003, due to Graves' Disease, dyslexia, a reading impairment, inability to tolerate sunlight and heat and low blood pressure.  (Tr. at 116-18, 15, 141.)  The claims were denied initially and upon

reconsideration.  (Tr. at 97-101, 103-05.)  Claimant requested a hearing before an Administrative Law Judge ("ALJ"), and it was held on December 11, 2006, before the Honorable John Murdock.  (Tr. at 35-60.)  The ALJ ordered a consultative examination at the hearing, and on May 2, 2007, conducted a second hearing.  (Tr. at 61-85.)  By decision dated August 21, 2007, the ALJ determined that Claimant was not entitled to benefits.  (Tr. at 15-26.)  The ALJ's decision became the final decision of the Commissioner on August 5, 2008, when the Appeals Council denied Claimant's request for review.  (Tr. at 6-9.)  On October 3, 2008, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability.  See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972).  A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims.  20 C.F.R. §§ 404.1520, 416.920 (2007).  If an individual is found "not disabled" at any step, further inquiry is unnecessary.  Id. §§

2

404.1520(a), 416.920(a).  The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.  Id. §§ 404.1520(b), 416.920(b).  If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment.  Id. §§ 404.1520(c), 416.920(c).  If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.  Id. §§ 404.1520(d), 416.920(d).  If it does, the claimant is found disabled and awarded benefits.  Id.  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.  Id. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability.  Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.  20 C.F.R. §§ 404.1520(f), 416.920(f) (2007). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists

3

in the national economy. <u>McLamore v. Weinberger</u>, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since the alleged onset date. (Tr. at 17.)  Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of Crohn's disease, Graves' disease, hypertension and peripheral neuropathy. (Tr. at 17.)  At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 22.)  The ALJ then found that Claimant has a residual functional capacity for light work, reduced by nonexertional limitations. (Tr. at 22.)  As a result, Claimant can return to his past relevant work as a scale house operator (shipping and receiving weigher). (Tr. at 25.)  On this basis, benefits were denied. (Tr. at 26.)

<u>Scope of Review</u>

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence.  In <u>Blalock v. Richardson</u>, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

4

<u>Blalock v. Richardson</u>, 483 F.2d 773, 776 (4th Cir. 1972) (quoting <u>Laws v. Cellebreze</u>, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

<u>Claimant's Background</u>

Claimant was forty-one years old at the time of the first administrative hearing. (Tr. at 35.) Claimant attended school through the eleventh grade and attained his GED. (Tr. at 38-39.) In the past, Claimant served in the military and worked as a coal truck scale house worker. (Tr. at 41, 44.)

<u>The Medical Record</u>

The court has reviewed all evidence of record, including the medical evidence of record, and will summarize it briefly below.

The record includes Claimant's school records, which indicate that he received average to poor grades and that he withdrew after the eleventh grade due to "[l]ack of interest." (Tr. at 194-95.)

In 2001, Claimant underwent treatment at Duke University for Graves' disease. (Tr. at 393-402.) Claimant was given I-131 orally on May 3, 2001, but on May 4, 2001, when he was scheduled to undergo a thyroid uptake, Claimant reported he had thrown up 50 percent of his dosed iodine and was returning to West Virginia that day.  (Tr. at 393, 397.)  Although Claimant's measured 24-hour uptake of I-131 was 25.4%, within the normal range, it was unclear the accuracy of this result.  (Tr. at 397.)  Claimant's physician expressed concern that Claimant did not understand the significance of his marked hyperthyroidism, encouraged him to get close follow up care and prescribed a beta-blocker.  (Tr. at 394.)

On September 20, 2004, Nilima Bhirud, M.D. examined Claimant at the request of the State disability determination service and noted that Claimant had been diagnosed with hyperthyroidism in 1999, and that this condition has since been treated.  Dr. Bhirud further noted that Claimant reported chest pain with a history of heart catheterization, but Dr. Bhirud did not have those results. Claimant had injuries to both hands and had poor grip in both hands (20 pounds on the right and 30 pounds on the left).  Claimant could pick up a coin with each hand and write his name.  (Tr. at 247.)

On September 30, 2004, a State agency medical source completed a Physical Residual Functional Capacity Assessment and opined that Claimant had no limitations.  (Tr. at 250-55.)

On December 27, 2005, Lester Sargent, M.A. examined Claimant

6

at the request of the State disability determination service.
Claimant complained of excessive anxiety and apprehension
associated with fatigue, irritability and sleep disturbance.
Claimant had been taking Lexapro prescribed by his family
physician. Claimant denied prior mental health treatment. (Tr. at
259.) Mr. Sargent diagnosed generalized anxiety disorder on Axis
I and made no Axis II diagnosis. (Tr. at 261.)

The record includes treatment notes and other evidence from
Samar Sankari, M.D. dated August 27, 2002, through October 28,
2005. Dr. Sankari treated Claimant for his Graves' disease. (Tr.
at 264-83.)

On December 19, 2005, a State agency medical source completed
Physical Residual Functional Capacity Assessments for Claimant's
current condition and prior to his date last insured in September
of 2005, and opined that for both time periods, Claimant was
limited to light work with an occasional ability to climb ramps and
stairs, balance, stoop, kneel, crouch and crawl, an inability to
climb ladders, ropes and scaffolds, a need to avoid even moderate
exposure to extreme heat and cold and a need to avoid concentrated
exposure to hazards. (Tr. at 284-91, 292-99.)

On December 9, 2005, Claimant complained to Dr. Sankari of
upper abdominal pain, heartburn, globus, regurgitation and sour
brash for at least one year. Dr. Sankari's impression was
gastroesophageal reflux disease, weight loss and Graves' disease

7

status post radiation therapy with current hypothyroid state and abdominal pain.  Claimant was to increase Prevacid and undergo a repeat ultrasound.  (Tr. at 361.)

On December 16, 2005, Claimant underwent an abdominal ultrasound, and the impression was negative gallbladder ultrasound, borderline hepatosplenomegaly, and a larger left kidney without hydronephrosis in either kidney.  (Tr. at 363.)

On December 20, 2005, Claimant underwent an upper endoscopy and multiple biopsies by Dr. Sankari following complaints of upper abdominal pain, heartburn, globus regurgitation and sour brash for one year.  (Tr. at 364.)  The postoperative diagnosis was nonspecific gastritis, small hiatal hernia and irregular Z-line. (Tr. at 301.)  The small bowel biopsy showed mild chronic inflammation, the gastric biopsy showed chronic antritis and the esophagus biopsy showed chronic inflammation and focal goblet cell metaplasia, but no dysplasia was identified.  (Tr. at 366.)

On January 20, 2006, a State agency medical source completed a Psychiatric Review Technique form and opined that there was insufficient evidence of record related to Claimant's mental condition from his alleged onset in 2003, through the expiration of his insured status in September of 2005.  (Tr. at 306-19.)

On January 20, 2006, a State agency medical source completed a Psychiatric Review Technique form for the time period from September 26, 2005, to the present and opined that Claimant had

mental impairments that were not severe.  (Tr. at 320-33.)

On January 24, 2006, Claimant reported to Charleston Area Medical Center with complaints of an umbilical hernia.  (Tr. at 426.)  Claimant underwent umbilical hernia repair with mesh on February 22, 2006.  (Tr. at 425.)

On January 30, 2006, Dr. Sankari noted that Claimant's upper endoscopy indicated gastroesophageal reflux disease with intestinal metaplasia of the gastroesophageal junction (Barrett's equivalent), umbilical hernia, abnormal liver enzymes most likely indicative of steatosis (fatty liver) and right bundle branch block.  (Tr. at 360.)  Dr. Sankari continued Claimant on Prevacid, recommended evaluation for the right bundle branch block and noted that Claimant planned to undergo umbilical hernia repair.  (Tr. at 360.)

On April 24, 2006, Dr. Sankari noted that Claimant underwent an umbilical herniorrhaphy, but recently fell down on his stomach, which resulted in a rash and injury to his lower and upper extremities and abdomen, the site of his herniorrhaphy.  Claimant reported that this developed slowly into redness and pain associated with vomiting and heartburn.  (Tr. at 359.)  Dr. Sankari diagnosed periumbilical cellulitis and gastroesophageal reflux disease with Barrett's esophagus.  Dr. Sankari recommended that Claimant follow up with his surgeon as soon as possible and that he take the appropriately prescribed antibiotics.  He also prescribed Phenergan for nausea and vomiting.  (Tr. at 359.)

On July 9, 2006, Claimant reported to the emergency room following an episode of syncope with chest pain. (Tr. at 338.) A head CT scan showed no acute intracranial process. (Tr. at 345.) Chest x-rays were normal. (Tr. at 346.) Claimant was transferred to Charleston Area Medical Center, where he underwent an echocardiogram that was normal. He was diagnosed with chest tightness. (Tr. at 434.)

The record includes treatment notes from Michael Goins, M.D. dated July 12, 2006, through October 2, 2006. On July 12, 2006, Claimant underwent a consultative examination after he reported to the emergency room with complaints of chest pain and nausea. Dr. Goins diagnosed vertigo, questionable etiology and tinnitus. (Tr. at 385-86.) On August 28, 2006, Dr. Goins noted that an ENG revealed both bilateral peripheral weakness and a central pathology. Claimant's vertigo was about the same. Claimant was scheduled to undergo an MRI. (Tr. at 378.) On October 2, 2006, Claimant reported that his vertigo was "somewhat better." (Tr. at 377.) Dr. Goins noted that Claimant's MRI only revealed cerebellar atrophy, which may account for his central weakness. Dr. Goins' assessment was vertigo, eustachian tube dysfunction, laryngopharyngeal reflux and nasal congestion. (Tr. at 377.)

On November 20, 2006, Mareda L. Reynolds, M.A. conducted a consultative examination at the request of Claimant's counsel. Claimant reported he had never received therapy or counseling

10

services, but that his family physician prescribed psychotropic medication. (Tr. at 369.) Claimant reported excessive worry. Claimant's mental status examination was remarkable for dysphroic mood and constricted affect. Ms. Reynolds diagnosed anxiety disorder, not otherwise specified, major depressive disorder, recurrent, moderate and alcohol dependence in remission on Axis I and made no Axis II diagnosis. (Tr. at 372.)

Ms. Reynolds completed an assessment on which she opined that Claimant was markedly limited in the ability to maintain attention and concentration for extended periods, in the ability to complete a normal work day and work-week without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods and in the ability to set realistic goals or make plans independently of others. (Tr. at 373-74.)

On December 4, 2006, R.D. Bowe III, M.D. completed an RFC Mental Impairment Questionnaire in which he opined that Claimant was markedly limited in his ability to understand, remember and carry out instructions, maintain attention for extended periods, complete a normal work day and work week without interruption and complete a normal work day or work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. at 387-88.) Dr. Bowe further opined that Claimant experienced

11

symptoms severe enough to seriously interfere with attention and concentration occasionally and that Claimant could not keep pace with other employees because he was taking Hydrocodone and Dolgic. (Tr. at 390.)

Claimant underwent an MRI of the brain and posterior fossa on September 14, 2006, and it showed no acoustic schwannoma, no CP angle mass and no posterior fossa pathology. (Tr. at 384.)

On February 13, 2007, Larry J. Legg, M.A. conducted a consultative examination at the request of the State disability determination service. Mr. Legg diagnosed dysthymic disorder, late onset and generalized anxiety disorder on Axis I and made no Axis II diagnosis. (Tr. at 409.)

Mr. Legg completed a Medical Source Statement of Ability to do Work-Related Activities (Mental) on which he opined that Claimant had slight to moderate limitations in most areas. (Tr. at 411-12.)

On February 21, 2007, Kip Beard, M.D. conducted a consultative examination at the request of the State disability determination service. Dr. Beard's impression was Graves' disease, status post radioactive iodide, iatrogenic hypothyroidism, currently controlled and treated, history of elevated high blood pressure, not currently treated, reported history of cardiac enlargement with EKG evidence of right bundle-branch block, cardiac palpitations and history of blast injury. (Tr. at 419.)

Dr. Beard completed a Medical Source Statement of Ability to

12

do Work-Related Activities (Physical) and opined that Claimant could perform medium level work, with limitation in the upper extremities, that he could frequently perform all postural limitations, and that he had no manipulative or visual/communicative limitations. (Tr. at 421-24.)

On April 10, 2007, Samer Nasher, M.D. examined Claimant because of complaints related to increased heart palpitations with blurred vision and numbness in the extremities. Dr. Nasher's impressions were peripheral neuropathy with restless leg; rule out partial seizures for the staring spells; migraines, tension and rebound headaches; insomnia, anxiety, depression and amnesia; history of second-degree burns from explosive accident; and history of neck pain from falling off a tank. (Tr. at 437.)

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because (1) the ALJ failed to afford adequate weight to Claimant's treating physician and failed to recontact him; (2) the ALJ erred in failing to pose hypothetical questions to the vocational expert; (3) the ALJ erred in finding no medication side effects; (4) the ALJ failed to consider Claimant's impairments in combination; and (5) the ALJ erred in failing to find that Claimant's depression and anxiety were not severe impairments. (Pl.'s Br. at 2-15.)

In response, the Commissioner argues that (1) substantial

evidence supports the ALJ's finding that Claimant could perform his past relevant light work as a scale house operator; (2) the ALJ properly found that Claimant does not have a severe mental impairment; (3) the ALJ did not err in failing to accept the opinion of Claimant's treating physician; (4) the ALJ did not err in failing to find no medication side effects because Claimant did not identify in the record where he complained to his treating sources about such side effects; (5) the ALJ did not err in rejecting Claimant's subjective complaints of pain; and (6) the ALJ did not err in failing to elicit testimony from the vocational expert.   (Def.'s Br. at 8-14.)

Claimant first argues that the ALJ failed to afford controlling weight to the opinion of Dr. Bowe and erred in rejecting his opinion simply because Dr. Bowe is not a psychiatrist.  In addition, Claimant asserts that the ALJ should have contacted Dr. Bowe for clarification of his opinions or called a medical expert to testify at the administrative hearing.  (Pl.'s Br. at 5-7.)  In a related vein, Claimant asserts that the ALJ erred in failing to find that his depression and anxiety were severe impairments and in the weight afforded Ms. Reynolds' report. (Pl.'s Br. at 12-14.)

In his decision, the ALJ acknowledged the evidence of record related to Claimant's alleged mental impairments, including the examinations by Mr. Sargent, Ms. Reynolds and Mr. Legg, Dr. Bowe's

14

opinion on the mental assessment and the opinion of the State agency medical source in January of 2006. (Tr. at 20-22.) The ALJ concluded that Claimant has medically determinable mental impairments, including affective disorder, generalized anxiety disorder and learning disorder, but that they do not, singly or in combination, cause more than a minimal limitation on Claimant's ability to perform basic mental work activities. The ALJ concluded that Claimant had mild limitation in activities of daily living, social functioning and concentration, persistence and pace and no episodes of decompensation. (Tr. at 20-21.)

The ALJ explained that he rejected the assessments of Ms. Reynolds, Mr. Legg and Dr. Bowe and accepted the opinion of the State agency medical source. (Tr. at 21-22.) As to Dr. Bowe in particular, the ALJ explained that although Dr. Bowe was Claimant's treating physician, "he is not a psychiatrist. His specialization is internal medicine and pediatrics. Therefore, the undersigned rejects this opinion because it is outside of his area of expertise." (Tr. at 22.) Furthermore, at the second administrative hearing, the ALJ specifically indicated that the record did not contain evidence from Dr. Bowe, other than the assessment. As a result, the ALJ gave Claimant thirty days to submit additional evidence. (Tr. at 83-84.) Claimant did not submit additional evidence from Dr. Bowe.

The court proposes that the presiding District Judge find that

15

the ALJ's determination that Claimant's mental impairments are not severe is supported by substantial evidence.  The ALJ's analysis of Claimant's mental impairments is in keeping with the applicable regulations at 20 C.F.R. §§ 404.1520a(a) and 416.920a(a) (2007).  Furthermore, the ALJ's ultimate determination that Claimant does not have a severe mental impairment is supported by substantial evidence.  Claimant received no ongoing treatment from a mental health professional, beyond medication prescribed by his treating physician.  Despite being given an opportunity to do so, Claimant failed to submit treatment notes or other evidence from Dr. Bowe that would provide support for his assessment that Claimant suffered a disabling mental impairment or his reasons for prescribing psychotropic medication.

It is Claimant's responsibility to prove to the Commissioner that he or she is disabled.  20 C.F.R. §§ 404.1512(a) and 416.912(a) (2007).  Thus, Claimant is responsible for providing medical evidence to the Commissioner showing that he or she has an impairment.  Id. §§ 404.1512(c) and 416.912(c).  Although the ALJ has a duty to fully and fairly develop the record, he or she is not required to act as plaintiff's counsel.  Clark v. Shalala, 28 F.3d 828, 830-31 (8th Cir. 1994).  Claimant bears the burden of establishing a prima facie entitlement to benefits.  See Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); 42 U.S.C.A. § 423(d)(5)(A)("An individual shall not be considered to be under a

16

disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require.")   Similarly, he or she "bears the risk of non-persuasion." Seacrist v. Weinberger, 538 F.2d 1054, 1056 (4th Cir. 1976).

In the instant matter, Claimant had the opportunity to submit treatment notes or other evidence from Dr. Bowe, but he failed to do so.  The ALJ was justified in rejecting Dr. Bowe's opinion that Claimant's mental impairments were disabling for the reasons given in his decision (that Dr. Bowe was not a psychiatrist) and because Claimant failed to submit any additional evidence from Dr. Bowe as requested, and the court proposes that the presiding District Judge so find.  While Claimant complains that the ALJ failed to consider the factors identified at 20 C.F.R. §§ 404.1527(d) and 416.927(d) (2007), regarding length of the treatment relationship and frequency of evaluation, nature and extent of the treatment relationship, supportability, consistency and specialization, the court disagrees.   The ALJ rejected Dr. Bowe's opinion based on supportability (the lack thereof in this matter) and specialization (the fact that Dr. Bowe was not a psychiatrist).  The court is hard pressed to see how the ALJ could have considered the remaining factors when Dr. Bowe's opinion was not supported by treatment notes or other evidence.

Finally, as the Commissioner points out in his brief, the

17

regulations related to recontacting medical sources state that such is required only when the information is "inadequate for us to determine whether you are disabled" 20 C.F.R. §§ 404.1512(e) and 416.912(e) (2007).  Dr. Bowe's report was not ambiguous, it was clear that Dr. Bowe believed Claimant was disabled.  Unfortunately, it was an unsupported opinion, one that the ALJ, with sufficient explanation and in keeping with the applicable regulations, was entitled to reject.

Regarding the weight afforded Ms. Reynolds' opinion, the ALJ adequately explained his reasons for rejecting the report and findings of Ms. Reynolds, who examined Claimant at his counsel's request, and his findings are supported by substantial evidence. The ALJ explained that Ms. Reynolds' findings on the assessment were inconsistent with her evaluation where Claimant "reported in detail about his social history, which included his living arrangements until age 18, when he joined the United States Army with subsequent honorable discharge.  He also reported in detail his medical history with dates and duration of hospitalizations with specific treatments that he received (Exhibit 13F)."  (Tr. at 21.)

Next, Claimant argues that the ALJ erred in failing to pose hypothetical questions to the vocational expert at either administrative hearing even though he experienced nonexertional limitations related to pain and his mental and other impairments.

18

(Pl.'s Br. at 7-9.)

The court proposes that the presiding District Judge find that substantial evidence supports the ALJ's determination that Claimant could perform his past relevant work as a scale house operator, that the ALJ was not required to call a vocational expert at the fourth step in the sequential analysis, and that because the Claimant could return to his past relevant work, the ALJ was not required to proceed to the fifth step in the sequential analysis.

In his decision, the ALJ found, at the third step of the sequential analysis, that Claimant was limited to light work, reduced by an inability to climb ladders, ropes and scaffolds, an occasional ability to balance, stoop, kneel, crouch and crawl, a need to avoid concentrated exposure to hazardous machinery and dangerous heights and a need to avoid even moderate exposure to temperature extremes.  (Tr. at 22.)  At the fourth step of the sequential analysis, the ALJ found that Claimant could return to his previous work as a scale house operator (shipping and receiving weigher).  (Tr. at 25.)  The ALJ explained that

> [t]he Dictionary of Occupational Titles shows that the claimant's past work as [a] scale house operator does not require more than light exertion; climbing ladders, ropes, and scaffolds; more than occasional climbing ramps and stairs; more than occasional balancing, stooping, kneeling, crouching, and crawling; more than concentrated exposure to hazardous machinery and dangerous heights; and more than moderate exposure to temperature extremes.
>
> In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it

as it is actually and generally performed.
(Tr. at 26.)

The ALJ was not required to question the vocational expert
about Claimant's ability to return to his past relevant work.  20
C.F.R. §§ 404.1560(b)(2) and 416.960(b)(2) (2007) ("We may use the
services of vocational experts or vocational specialists ... or
[the DOT] ... to help us determine whether you can do your past
relevant work, given your residual functional capacity.").

Instead, the ALJ relied upon the DOT in finding that Claimant
could return to his past relevant work, and fully complied with
Social Security Ruling 82-62, 1982 WL 31386, *4 (1982), which
requires the following specific findings of fact when the
Commissioner determines that a claimant can return to his or her
past relevant work:

> 1.   A finding of fact as to the individual's RFC
> [residual functional capacity].
> 2.   A finding of fact as to the physical and mental
> demands of the past job/occupation.
> 3.   A finding of fact that the individual's RFC would
> permit a return to his or her past job or occupation.

Because the ALJ determined that Claimant could return to his past
relevant work, he was not obligated to proceed to the fifth step in
the sequential analysis.  29 C.F.R. §§ 404.1520(a) and 416.920(a)
(2007) (If an individual is found "not disabled" at any step,
further inquiry is unnecessary.).

Claimant argues that the ALJ erred in finding that the record
does not establish side effects from his medications in light of

20

the fact that Claimant was taking fourteen medications at the time of the hearing. Claimant asserts that he suffers from burning in his kidneys and stomach. (Pl.'s Br. at 9-10, Tr. at 210-11.)

The court proposes that the presiding District Judge find that the ALJ's pain and credibility findings are consistent with the applicable regulations, case law and SSR 96-7p and are supported by substantial evidence. 20 C.F.R. §§ 404.1529(b) and 416.929(b) (2007); SSR 96-7p, 1996 WL 374186 (July 2, 1996); Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). The ALJ's decision contains a thorough consideration of Claimant's daily activities, the location, duration, frequency, and intensity of Claimant's pain and other symptoms, precipitating and aggravating factors and Claimant's medication. (Tr. at 24-25.)

Regarding Claimant's medications in particular, the ALJ found that "[t]he record does not establish any side effects from any medication, which would interfere with his ability to perform past relevant work." (Tr. at 25.) While Claimant takes issue with this finding, he fails to cite in the record where he complained to medical sources about medication side effects.

Claimant argues that the ALJ failed to consider the combined effects of his impairments, including a variety of physical and mental impairments and symptoms. (Pl.'s Br. at 11-12.) Claimant cites to his mental impairments, fainting spells, coronary artery disease, retinal problems in the left eye, a hearing impairment,

learning disorder, migraine headaches, Crohn's disease, Graves'
disease, vertigo, tinnitus, fatigue, drowsiness from his
medications, cerebella atrophy, forgetfulness and peripheral
neuropathy. (Pl.'s Br. at 10.)

The social security regulations provide,

> In determining whether your physical or mental
> impairment or impairment are of a sufficient
> medical severity that such impairment or
> impairments could be the basis of eligibility
> under the law, we will consider the combined
> effect of all of your impairments without
> regard to whether any such impairment, if
> considered separately, would be of sufficient
> severity.

20 C.F.R. §§ 404.1523 and 416.923 (2007).  Where there is a
combination of impairments, the issue "is not only the existence of
the problems, but also the degree of their severity, and whether,
together, they impaired the claimant's ability to engage in
substantial gainful activity." Oppenheim v. Finch, 495 F.2d 396,
398 (4th Cir. 1974).  The ailments should not be fractionalized and
considered in isolation, but considered in combination to determine
the impact on the ability of the claimant to engage in substantial
gainful activity.  Id.  The cumulative or synergistic effect that
the various impairments have on claimant's ability to work must be
analyzed.  DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983).

The court proposes that the presiding District Judge find that
the ALJ properly considered Claimant's impairments alone and in
combination.  Claimant cites to a number of impairments and

symptoms, many of which the ALJ found to be severe. The ALJ considered those impairments, including Graves' disease, Crohn's disease, hypertension and peripheral neuropathy, to be severe and considered them alone and in combination at arriving at his residual functional capacity finding. Many of the remaining impairments and associated symptoms, the ALJ considered, but found to be nonsevere. In particular, the ALJ found that Claimant's mental impairments, his headaches, visual problems, heart problems and hearing impairment were not severe impairments. (Tr. at 19-20.) Claimant alleged a learning disorder, but had IQ scores in the 80s, and was never diagnosed with a learning disorder. (Tr. at 407.) Dr. Goins noted that Claimant's vertigo had improved. (Tr. at 377.) Despite finding the above impairments to be nonsevere, the ALJ considered them in assessing Claimant's subjective complaints, as he is required to do pursuant to SSR 96-8p (Tr. at 24-25). SSR 96-8p, 1996 WL 362207, *34477 (July 2, 1996) (In assessing Claimant's pain and credibility, the ALJ should consider the "limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'").

For the reasons set forth above, it is hereby respectfully RECOMMENDED that the presiding District Judge AFFIRM the final decision of the Commissioner and DISMISS this matter from the court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections), and then three days (service/mailing), from the date of filing this Proposed Findings and Recommendation, within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the district court and a waiver of appellate review by the circuit court of appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties and Judge Copenhaver.

The Clerk is directed to file this Proposed Findings and Recommendation, to transmit a copy to counsel for the Defendant and to mail a copy to the Plaintiff.

February 18, 2010
     Date

Mary E. Stanley
United States Magistrate Judge